***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for minor modifications. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On December 9, 1998, an employment relationship existed between plaintiff and Corning.
3. The carrier on the risk for workers' compensation purposes is Royal SunAlliance.
4. On December 9, 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with Corning.
5. Defendants admitted liability for plaintiff's injury pursuant to a Form 60 dated October 4, 1999. Defendants have been paying plaintiff ongoing temporary total disability compensation benefits pursuant to the Form 60.
6. The Form 60 inaccurately lists plaintiff's average weekly wage. Plaintiff's average weekly wage on December 9, 1998, was $676.20, which yields an applicable compensation rate of $450.83. Defendants have compensated plaintiff for the underpayment in temporary total disability benefits, and continue to pay plaintiff at the correct rate of $450.83.
7. In addition to the deposition transcripts, the parties stipulated into evidence in this matter Stipulated Exhibit 1, plaintiff's medical records.
8. The issues to be determined as a result of the hearing before the Deputy Commissioner were whether plaintiff is entitled to further medical treatment and diagnostic testing, and whether plaintiff is entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Plaintiff seeks authorization to be examined and possibly treated by Dr. Bettendorf or Dr. Liguori, both of whom are physiatrists.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner in this matter, plaintiff was 42 years old. Plaintiff completed one year of college and began working for Corning on May 17, 1993. Her job title in 1998 was a Process Associate II.
2. On December 9, 1998, plaintiff sustained an admittedly compensable injury by accident to her right shoulder when working on a piece of machinery. Defendants admitted liability for plaintiff's right shoulder injury and began to pay indemnity benefits and direct plaintiff's medical treatment.
3. Plaintiff had a great deal of medical treatment and various evaluations since the date of her injury. In early March 1999, plaintiff came under the care of Dr. Sutton, an orthopaedic surgeon. Dr. Sutton ultimately performed a right shoulder arthroscopic debridement and biceps tenodesis.
4. Despite the surgery, plaintiff continued to experience burning and pain in her shoulder. Accordingly, Dr. Sutton referred plaintiff to Dr. Kevin P. Speer, an orthopaedic surgeon at Duke University Medical Center. On May 23, 2000, Dr. Speer performed a right shoulder capsular release and subacromial decompression with debridement and referred plaintiff back to Dr. Sutton for post-operative follow-up visit.
5. Plaintiff continued to experience right shoulder pain and problems, and was seen in a neurosurgical workup by Dr. Thomas E. Melin. An MRI performed at Dr. Melin's direction ruled out a cervical source of plaintiff's problems. Dr. Melin noted, however, that plaintiff may have some involvement of the suprascapular nerve on the right. Surgical intervention was not warranted and Dr. Melin felt that pain management was appropriate.
6. Plaintiff began treating at the Center for Pain Management in November 2000, and came under the care of Dr. Knab in March 2001. A number of different medications and injections were attempted but plaintiff obtained little relief with this type of therapeutic intervention. In September 2001, Dr. Knab noted that this treatment did not appear to be helping plaintiff, and he released her at maximum medical improvement. Thereafter, Dr. Knab recommended as an appropriate measure a referral to a physiatrist, Dr. Liguori, although Dr. Knab could not be certain whether such treatment would benefit plaintiff.
7. Defendants did not authorize an evaluation with Dr. Liguori. Plaintiff did return to Dr. Sutton on September 10, 2002, and Dr. Sutton ordered an MRI. This MRI was normal, but plaintiff continued to complain of pain and burning in her right shoulder, so Dr. Sutton indicated that additional evaluations with a neurosurgeon or neurologist would be appropriate. Although Dr. Sutton's notes from September 26, 2002 do not report the same, he also recommended that plaintiff be seen by a physiatrist, Dr. Bettendorf. Defendants denied this referral.
8. On March 21, 2002, Deputy Commissioner Theresa B. Stephenson denied plaintiff's administrative motion for an evaluation and treatment with Dr. Liguori on the grounds that plaintiff produced insufficient evidence in support of her motion. This decision was based upon Dr. Knab's October 23, 2001, letter in which he stated in part: "I cannot state whether or not a physiatrist would be able to help [plaintiff] in any way. . . ." However, the rest of the letter, in fact the rest of that very sentence, indicates that Dr. Knab believed that a referral to a physiatrist was indeed an appropriate measure.
9. In a letter to defendant-carrier dated February 14, 2002, Dr. Knab reiterated that he had nothing else to offer plaintiff from an interventional pain management standpoint. However, it was Dr. Knab's further opinion that there is another course of treatment that is available, namely physical medicine modalities to be directed by a physiatrist, such as Dr. Liguori. The treatment offered by a physiatrist is different from that offered by Dr. Knab.
10. Dr. Sutton's referral to Dr. Bettendorf, while not specifically mentioned in his office notes from September 2002, was conveyed to medical case manager Cynthia Perkins, who was assigned by defendants. She conveyed this referral to the adjuster and then advised Ms. Stoughton that the adjuster had denied the referral. Ms. Stoughton testified at the hearing that the referral to Dr. Bettendorf had indeed been denied.
11. Dr. Sutton testified to a reasonable degree of medical certainty, in an opinion deemed by the Full Commission to be credible and accepted as fact, that it is medically indicated for plaintiff to be evaluated and possibly treated by Dr. Bettendorf, a physiatrist, and that it is reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability for plaintiff to be so evaluated and treated.
12. Dr. Knab testified to a reasonable degree of medical certainty, in an opinion deemed by the Full Commission to be credible and accepted as fact, that plaintiff would benefit from an evaluation with Dr. Liguori, a physiatrist.
13. Defendant's authorized treating physician first recommended treatment by a physiatrist in September 2001. Despite the fact that another authorized treating physician made the same recommendation in September 2002, defendants still refused to authorize treatment with a physiatrist. At the hearing before the Deputy Commissioner, defendants offered absolutely no evidence in support of their position. Then, despite the uncontroverted post-hearing testimony of Dr. Knab and Dr. Sutton, defendants still refused to authorize the treatment.
14. Defendants suggest that their denial of further treatment was reasonable because the treatment rendered to date had not been successful in curing plaintiff's chronic pain or identifying the specific cause of her ongoing complaints. However, many of the tests defendants reference in their brief were performed either prior to Dr. Sutton's or Dr. Speer's surgeries (both of which revealed objective abnormalities that had been missed by diagnostic testing), or were designed to rule out a cervical source for plaintiff's ongoing problems. From day one, plaintiff's complaints have been in her shoulder and not her neck, and no doctor has ruled out the suprascapular nerve injury or brachial plexus injury suggested by Dr. Melin's neurosurgical exam. Moreover, Dr. Knab testified that he routinely refers patients who have failed to improve under his care to a physiatrist. He further testified that the fact that plaintiff did not respond to his therapies does not in any way suggest that plaintiff does not have a nerve or muscular problem which would benefit from physiatric treatment.
15. Dr. Sutton testified that some conditions are harder to delineate than others, and that a physiatrist can offer other diagnostic and therapeutic treatment options which he thought were reasonable and necessary at that point in Ms. Stoughton's care. The bottom line is that it is the authorized treating physician, not the adjuster, who is qualified to make these decisions as to what further treatment is reasonable and necessary. If the adjuster undertakes to make these decisions on her own, despite the recommendations and uncontroverted testimony of the authorized treating physicians, then the carrier needs to be prepared to pay plaintiff's attorney's fees for making plaintiff go to hearing to obtain what she is clearly entitled to under the Act.
16. Defendants argue that Deputy Commissioner Stephenson's denial of plaintiff's motion in the administrative forum is a complete defense to plaintiff's request for attorney's fees. However, in that regard it is important to point out that Deputy Commissioner Stephenson did not have Dr. Knab's February 20, 2002, office note wherein Dr. Knab explained that his practice was in fact distinct and different in scope than that of a physiatrist, and that he "continue[s] to believe that Ms. Stoughton may be helped by such physical medicine based regimen" (emphasis added). Defendants could have authorized the treatment after receiving the note at that point, but they did not. They refused to authorize further treatment of any kind until September 2002, when they sent plaintiff back to Dr. Sutton, who made the same treatment recommendation as Dr. Knab a year earlier. At that point, at the latest, defendants' refusal to authorize treatment with a physiatrist became unreasonable despite Deputy Commissioner Stephenson's prior order. If despite all of this defendants are going to make plaintiff go to a hearing to obtain treatment which has been recommended by two of defendants' own doctors, they ought to at least have to come forward with some evidence showing that the treatment is not necessary or that plaintiff has not been truthful. Defendants offered NOTHING, and then object when they are ordered to pay attorney's fees. Deputy Commissioner Pfeiffer was completely justified in assessing attorney's fees in this case.
17. Plaintiff's counsel is skilled in Workers' Compensation Law, having served for many years as a Deputy Commissioner actively hearing cases for the North Carolina Industrial Commission. A reasonable hourly fee for her work for plaintiff, considering the nature of the work and the skill of the practitioner, is $150.00 per hour. Based upon affidavit, the Full Commission finds that plaintiff's attorney spent 33 hours in work preparing for and prosecuting the matter of physiatric treatment after defendants' unreasonable refusal to authorize the same, and in overcoming defendants' unfounded and unreasonable litigiousness. The Full Commission therefore finds that a proper and reasonable fee pursuant to N.C. Gen. Stat. § 97-88.1 would be $4,950.00.
18. Despite the recommendations of two of plaintiff's authorized treating physicians, defendants have yet to authorize even an evaluation with Dr. Bettendorf or Dr. Liguori. Plaintiff has had to go to a hearing before the Deputy Commissioner in order to seek an evaluation and possible treatment that have been recommended by her treating physicians. Defendants have not had reasonable ground to defend plaintiff's motion for such evaluation and/or treatment.
19. This appeal was brought by the insurer, and the Full Commission, by this Opinion and Award orders the insurer to make payments of benefits, including compensation for medical expenses, to the injured worker. It is therefore appropriate for the Full Commission to award a reasonable attorney fee to plaintiff's counsel for defense of this appeal. The Full Commission finds such reasonable fee to be $1,000.00.
 ***********
The foregoing stipulations and findings of fact result in the following additional:
 CONCLUSIONS OF LAW
1. It is reasonable and necessary, and plaintiff would likely benefit from, an evaluation and possible ongoing medical treatment with a physiatrist of her choosing, and she is entitled to the same. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
2. Two of plaintiff's authorized treating physicians, Drs. Sutton and Knab, have recommended a referral to a physiatrist for evaluation and possible ongoing treatment. Defendants have defended plaintiff's request for such evaluation and treatment without reasonable ground based upon these opinions. N.C. Gen. Stat. § 97-88.1. See also I.C. Rule 407(4).
3. Plaintiff is entitled to have the costs of this appeal taxed to defendants pursuant to N.C. Gen. Stat. § 97-88.
4. The Industrial Commission is authorized pursuant to N.C. Gen. Stat. § 97-88.1 to assess attorney's fees in any case either prosecuted or defended without reasonable ground. The purpose of this section is "to prevent stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees."Troutman v. White Simpson, Inc., 121 N.C. App. 48,464 S.E.2d 481 (1995).
 ***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission enters the following:
 AWARD
1. Defendants shall authorize and provide for evaluation and possible ongoing treatment, as appropriate, with either Dr. Bettendorf or Dr. Liguori, upon election by plaintiff.
2. Defendants shall pay a reasonable attorney fee pursuant to N.C. Gen. Stat. § 97-88.1 of $4,950.00 to plaintiff's counsel for its unreasonable defense of this request.
3. Defendants shall pay a reasonable attorney fee of $1,000.00 to plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88.
4. Defendants shall pay the costs of this proceeding.
This 16th day of December 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN